NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0342n.06

No. 21-2802

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 19, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| EDWARD PINKNEY, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| BERRIEN COUNTY, MICHIGAN; BERRIEN COUNTY PROSECUTOR, in his official capacity as a local, non-state official with a legal existence separate and distinct from the county, jointly and severally, | ) | |
| Defendants-Appellees. | ) | |

_____ /

Before: GUY, THAPAR, and READLER, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge**. Edward Pinkney's five felony convictions for election forgery were reversed when the Michigan Supreme Court held that the statute of conviction—Mich. Comp. Laws (MCL) § 168.937—is merely a leftover penalty provision that "does not create a substantive offense." *See People v. Pinkney*, 912 N.W.2d 535, 536, 550 (Mich. 2018), *reversing* 891 N.W.2d 891 (Mich. Ct. App. 2016). Pinkney subsequently filed this civil action under 42 U.S.C. § 1983, alleging that he was deprived of his federal due process rights by the prosecutor's decision to charge and prosecute him for what would be declared "non-existent" offenses. The district court granted the defendants' motion to dismiss for failure to state a claim, after declining to stay the case pending resolution of Pinkney's appeal in his parallel state court action. Having had the benefit of oral argument, and in light of the intervening Michigan Court of

Appeals' decision in the parallel state court action, we **DENY** Pinkney's latest request to stay this appeal and **AFFIRM** the district court's judgment.

I.

In January 2014, as part of an effort to recall the mayor of Benton Harbor, Michigan, Edward Pinkney presented 62 recall petitions to the Berrien County Clerk's Office. *See Pinkney II*, 912 N.W.2d at 536. Perceived irregularities with some of those petitions resulted in an investigation, which found that five petitions contained signatures with "dates [that] had been altered so as to fall within the 60-day window for valid signatures." *Id.* at 537. Berrien County Prosecutor Michael Sepic initiated a criminal prosecution on "five counts of election-law forgery under MCL [§] 168.937 and six counts of making a false statement in a certificate-of-recall petition under MCL [§] 168.957." *Id.* At the conclusion of trial, the jury found Pinkney guilty of the felony election- forgery charges and acquitted him of the other counts. Pinkney was sentenced to 30 to 120 months of imprisonment and served the minimum term before being released on parole in June 2017.

Pinkney argued from the start that § 168.937 does not create a chargeable substantive offense—in a motion to quash, at trial, and by a motion for directed verdict—and appealed on that basis. The Michigan Court of Appeals rejected that challenge, agreeing with an unpublished opinion it had issued in another case. *Id.* at 537 nn.5 & 9 (citing *People v. Hall*, No. 321045, 2014 WL 5409079 (Mich. Ct. App. Oct. 23, 2014) (per curiam), *rev'd on other grounds* 884 N.W.2d 561 (Mich. 2016)). Pinkney finally prevailed when the Michigan Supreme Court concluded from a review of the statutory language, context, and history that § 168.937 was an orphaned, inoperative penalty provision that did not create a substantive election-forgery offense. *Pinkney*, 912 N.W.2d at 539-40; *see id.* at 550 ("[W]e recognize that our conclusion that § 937 is an

inoperative penalty provision is an unusual one, and it is not one that we reach lightly."). As a result, Pinkney's convictions were vacated and he was released from parole.[1]

Once Pinkney prevailed in his criminal appeal, he brought two civil actions to recover damages for having been charged, prosecuted, and convicted of "non-existent" offenses. His first suit, filed in the Michigan Court of Claims, asserted due process claims under the Michigan Constitution. When that complaint was dismissed on summary disposition, Pinkney appealed but also filed this § 1983 action in federal court asserting similar due process claims under the U.S. Constitution.

Factually, both cases alleged that former Berrien County Prosecutor Michael Sepic personally secured the warrant, signed the information and amended information, and appeared in the criminal proceedings against Pinkney. Pinkney disavows any claim that Sepic intended to violate Pinkney's constitutional rights—asserting only that Sepic intended to "deprive Pinkney of his liberty through prosecution, conviction and incarceration." Also, Pinkney has not alleged any individual capacity claims against Sepic in recognition that absolute prosecutorial immunity would almost certainly bar such claims. *See Kalina v. Fletcher*, 522 U.S. 118, 129 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

Here, Pinkney alleges violations of his procedural and substantive due process rights under only the U.S. Constitution and expressly eschews any claim under the Fourth Amendment. The complaint alleged that the Prosecutor's actions were taken in his official capacity as a final

---

[1] The Michigan statute in question provides: "Any person found guilty of forgery under the provisions of this act shall, unless herein otherwise provided, be punished by a fine not exceeding $1,000.00, or by imprisonment in the state prison for a term not exceeding 5 years, or by both such fine and imprisonment in the discretion of the court." MCL § 168.937.

policymaker for Berrien County or the Prosecutor's Office—not on behalf of the State of Michigan as he had alleged in his state-court action—for purposes of establishing liability under a *Monell* theory. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986). Berrien County and the Prosecutor moved for dismissal of those claims, which Pinkney opposed. The district court granted defendants' motion, holding: (1) that the official capacity claims asserted against the Prosecutor are barred by sovereign immunity; (2) that the County could not be liable because the Prosecutor was acting for the State when prosecuting Pinkney under state law; and (3) that, in any event, Pinkney failed to plausibly allege federal due process claims cognizable under § 1983. Judgment was entered accordingly, and this appeal followed.

## II.

A district court's dismissal pursuant to Rule 12(b)(6) is reviewed de novo. *See Doe v. DeWine*, 910 F.3d 842, 848 (6th Cir. 2018); Fed. R. Civ. P. 12(b)(6). In doing so, this court construes the complaint in the light most favorable to plaintiff and determines whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).

Pinkney argues that the outcome of his state-court appeal could be relevant to the question of whether the official capacity claims in this federal action are barred by sovereign immunity. *See Cady v. Arenac County*, 574 F.3d 334, 343 (6th Cir. 2009). The complaint in state court was brought against the Prosecutor, in his official capacity "as a sub-entity, arm and/or agency of the State of Michigan." An issue in the state-court appeal was whether the Prosecutor was a "state actor" whose actions could be attributed to the State. But the Michigan Court of Appeals affirmed

the dismissal of his state-law claims on other grounds, explaining that it "need not resolve this question because even if the Court of Claims erred regarding the 'state actor' issue, dismissal was nevertheless warranted on the basis of plaintiff's failure to allege or support any viable constitutional violation." *Pinkney v. Michigan*, No. 356363, 2022 WL 1701944, at \*4 (Mich. Ct. App. May 26, 2022), *recon. denied* June 24, 2022, *application for leave to appeal filed* July 7, 2022). Likewise, although Pinkney argues that this court should revisit its decision in *Cady*, the appellees acknowledged at oral argument that it "doesn't matter" if we reach the sovereign immunity issue, instead directing us toward the merits of the appeal. (Tr. 13:25-14:28). Accordingly, we need not resolve the sovereign immunity issue and instead find Pinkney has not alleged a constitutional violation cognizable under 42 U.S.C. § 1983. *See Armstrong v. Mich. Bureau of Servs. for Blind Persons*, 969 F.3d 337, 340 (6th Cir. 2020) (affirming on the merits without deciding the state's alternative sovereign-immunity defense when the state does not raise sovereign immunity as a threshold defense).

"Section 1983 'is not itself a source of substantive rights' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). The first step is to identify the precise constitutional right allegedly infringed. *Id*. (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989), and *Baker*, 443 U.S. at 140). Taking the factual allegations as true, the gravamen of Pinkney's complaint is that he was charged, prosecuted, convicted, and subjected to incarceration and parole for what were non-existent state law offenses. As the master of his complaint, Pinkney alleges that the Prosecutor's decision to pursue these charges violated his procedural and substantive due process rights under the U.S. Constitution.

The Due Process Clause of the Fourteenth Amendment "provide[s] a guarantee of fair procedure in connection with any deprivation of life, liberty, or property by a State." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). This procedural due process right "does not protect against all deprivations of liberty," only those "deprivations of liberty accomplished without 'due process of law.'" *Baker*, 443 U.S. at 145. The district court found Pinkney did not "identify a protected interest of which he was deprived without adequate process." Pinkney cites to *Hurtado v. California*, 110 U.S. 516 (1884), which involved whether a state could charge a crime by information rather than grand jury indictment. But Pinkney's claim is not based on how the charges were brought—but on the fact that he was charged under what would later be held to be an inoperative penalty provision. Although his ultimate exoneration may be of little consolation, Pinkney has not alleged that he was deprived of his liberty without adequate process.

The Fourteenth Amendment's substantive due process component "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins*, 503 U.S. at 125 (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). It "protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (cleaned up); *see also Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019).

Pinkney contends that substantive due process protects against prosecution and incarceration for a non-existent crime. For example, the Supreme Court reiterated that a guilty plea cannot waive a claim that "the charge is one which the State may not constitutionally prosecute." *Class v. United States*, 138 S. Ct. 798, 803-04 (2018) (quoting *Menna v. New York*,

423 U.S. 61, 62 n.2 (1975) (per curiam)). As a result, the defendant was able to pursue a constitutional challenge to the statute of conviction on direct appeal. *Id*. at 807; *see also Fiore v. White*, 531 U.S. 225, 227-28 (2001) (per curiam) (reversing conviction because a clarification of state law meant there was no proof of an element of the offense). And, in a federal habeas case, one circuit explained that "punish[ing] a person criminally for an act that is not a crime would seem the quintessence of denying due process of law." *Johnson v. United States*, 805 F.2d 1284, 1288 (7th Cir. 1986). These principles are consistent with the reversal of Pinkney's own convictions by the Michigan Supreme Court, but none recognize a § 1983 claim for damages.

Prior to *Albright v. Oliver*, this court "suggested that defendants had a substantive-due-process right under the Fourteenth Amendment to be free from malicious prosecutions that 'shock the conscience.'" *Lester v. Roberts*, 986 F.3d 599, 606 (6th Cir. 2021) (citing *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990) and *Cale v. Johnson*, 861 F.2d 943, 949–50 (6th Cir. 1988)). However, *Albright* rejected a claim based on a substantive due process right to be free from unreasonable prosecutions where, like here, no claim was asserted under the Fourth Amendment. *Albright*, 510 U.S. at 271 (plurality); *see also Manuel v. City of Joliet*, 580 U.S. 357, _; 137 S. Ct. 911, 918 (2017). Pinkney's claim has the same fate.

Start with the essence of Albright's claim: "[a] warrant was issued for [his] arrest by Illinois authorities, and upon learning of it he surrendered and was released on bail"; he was charged by "criminal information with the sale of a substance which looked like an illegal drug"; at a preliminary hearing, "the court found probable cause to bind [him] over for trial"; and, "[a]t a later pretrial hearing, the court dismissed the criminal action against [him] *on the ground that the charge did not state an offense under Illinois law*." 510 U.S. at 268-69 (emphasis added). Pinkney argues that his claim is not a Fourth Amendment claim because he was not arrested or held in

custody before trial—but neither was Albright. Pinkney also says his claim is that he was charged with a non-existent offense—so was Albright. Despite Albright's deliberate avoidance of the Fourth Amendment, his substantive due process claim under the Fourteenth Amendment was a liberty interest in the right "to be free from prosecution without probable cause." *Id*. at 271. Probable cause to prosecute may turn on fact *or* law. *Heien v. North Carolina*, 574 U.S. 54, 57 (2014) (explaining reasonable suspicion can be based on mistakes of fact or law); *see also Sinclair v. Lauderdale Cnty.*, 652 F. App'x 429, 438 (6th Cir. 2016) (finding probable cause for an arrest for which no law had been violated).

"[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *see also Albright*, 510 U.S. at 273. Pinkney's § 1983 claim based on the Prosecutor's decision to pursue charges under MCL § 168.937 arises under the Fourth Amendment (if at all) and not the substantive component of the Due Process Clause of the Fourteenth Amendment. *See Davis v. Gallagher*, 951 F.3d 743, 752 (6th Cir. 2020) (affirming dismissal of substantive due process claim); *Howse v. Hodous*, 953 F.3d 402, 408 n.2 (6th Cir. 2020) ("[B]ecause our circuit has held that a federal malicious-prosecution claim does arise under the Fourth Amendment (and not the Due Process Clause) we are bound by that decision and must consider Fourth Amendment principles when defining the scope of the claim"). But Pinkney neither asserts a claim under the Fourth Amendment nor challenges the district court's finding that he could not state a Fourth Amendment claim because "there is no question but that there was probable cause for Pinkney's prosecution." *See Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).

III.

The motion for stay of this appeal is **DENIED**, and the judgment of the district court is

**AFFIRMED**.